Kristen McLeod Ball on behalf of Amicus National Immigration Litigation Alliance addressing timeliness and jurisdiction in the two cases, the two petitions. Petitioners Council will address the merits and I'd like to reserve four minutes for rebuttal. These cases are about whether individuals facing persecution, torture, and death if deported have any right to a day in court. Petitioners in these cases did precisely as instructed by this when they received reinstatement orders. They pursued their fear-based claims in front of immigration judges and the BIA in reliance on the fact that they would be able to seek judicial review at the conclusion of those proceedings. The Supreme Court's decision in Riley last year upended that practice and as the Supreme Court itself acknowledged, created considerable practical difficulties, especially for people like the petitioners whose cases were already that time. Although the Supreme Court suggested that the government could ease these difficulties by waiving procedural objections in cases like this, the government has instead raised myriad objections to try and close the courthouse doors to petitioners' claims. Their arguments, which leave petitioners in a catch-22, which would result in a bar to judicial review, are both unfair and incorrect. On timeliness, I'll start with equitable tolling. 1252B1 is a run-of-the-mill filing deadline subject to the presumption in favor of tolling, which Congress didn't rebut here. The government has said that the... Your two, I'm sorry, your two issues that you were going to address is timeliness and... Jurisdiction, Your Honor. And so with respect to jurisdiction, you don't think we need to revisit our jurisdiction case law and application of our jurisdiction jurisprudence over restatement orders in light of Riley? Because that's the main, it seems like that's the main argument that the government is making regarding jurisdiction. No, Your Honor. I think that this court's precedent, which has had for decades, found that reinstatement orders are reviewable by petition for review still stands. The cases that respondent cites that purportedly allow reconsideration of that precedent don't meet the high bar for doing so. They aren't clearly irreconcilable with this court's precedent. Not one of them addressed a petition for review of a reinstatement order or reassessed whether a reinstatement order is a final order under the statute. But is there something we need to, I mean, to me, just as a logical matter, because a reinstatement order reinstates the prior order of removal, it seems that it can't be the final order of removal. And the only way I can see my way through this is considering, to consider that it is a final order of removal and that the statute contemplates that there can be more than one final order of removal in a particular proceeding. Yes, Your Honor. The statute doesn't preclude the fact that there could be more than one final order that's applicable to a single person. The reinstatement statute, it's, first, let me step back. The prior order that is the basis for a reinstatement order, at the time that it's reinstated, is not an operative order, right? It's defunct. If a person comes back, DHS can't simply remove them again on the basis of that order absent going through the process set forth in the reinstatement statute which DHS has enacted regs that sort of speak to that, right? So a reinstatement order is only permissible if somebody is departed under a prior order of removal and they return unlawfully. And before reinstating someone, before issuing a reinstatement order, DHS has created a process. They, it requires a set of legal and factual determinations, including whether there's a prior order, the identity of the person subject to the order, and evaluating the manner in which they return to the United States. So just to, I mean, I guess then that argument suggests there is only one final order of removal. Just whether it's actionable or not depends on what happens with the proceedings. And that's consistent with our treaty obligations that we have to review if someone has a reasonable fear of being tortured or in the country of removal. Or I guess I'm trying to parse out Judge Wardlaw's concern that there might be more than one final order of removal. But I'm reading, I'm listening to your argument and you seem to suggest that there's only one, but it's defunct until it gets animated again after the process. I think that's one way to treat it. But I think additionally, right, a reinstatement order, if you look at the text of it, is a decision order and certification. It states someone is removable in accordance with 1231 A5. And what the statute requires when defining a final order is that it's an order that concludes a non-citizen is deportable or orders its deportation. And my point earlier in saying that if somebody comes back, you can't just deport them because they have a final order of removal that was previously executed, is that this reinstatement order does order someone's removal, right? You cannot just, if somebody is deported, their final order is executed and they come back lawfully, that's fine. There's no final order that could order them deported at that stage. It only happens following the reinstatement process and the issuance of the reinstatement order. And I think that that's clear in the plethora of cases in which this court has reviewed both the factual and legal determinations that form the basis for the reinstatement order, that set of determinations that I was mentioning, as well as evaluating the process that is used by DHS to reinstate orders, DHS and EOIR. And so I also think that this court's decision in Vega Anguiano is instructive, where the court looked at whether in a challenge to a reinstatement order, the challenged sort of made a collateral attack on the prior order. If that order was, if that petition for review was timely filed as to, because it was filed within 30 days of the reinstatement order versus 30 days of the prior order. And so it's sort of, the court has already looked at and decided that the reinstatement order is a separate order. What was that case again? Vega Anguiano versus Barr, that's at 982 F3rd 542 from 2020. Unless the court has other questions about jurisdiction, I could move to equitable tolling. So there's a lot of discussion about whether this is a mandatory rule and whether that means it's not subject to tolling. No one disputes that the statute says a petition must be filed no later than 30 days after a final order of removal. But the Supreme Court has repeatedly said use of mandatory word like must or shall doesn't determine whether a deadline is subject to tolling. You jumped to equitable tolling. I mean, I don't know if you're going to discuss retroactivity or if your other counsel is going to. I'm happy to address retroactivity, Your Honor. My question is, don't we have to deal with retroactivity first before we get to equitable tolling? I think that there are a number of sort of equitable exceptions that would allow the court to treat these petitions as timely filed. I think that the retroactivity case law would permit that or equitable tolling of the filing deadline. What is your position on retroactivity? My position is that under the sort of test set out by this court under Nunez-Reyes, that it would be appropriate to treat the sort of the new rule that a PFR is untimely unless it's filed within 30 days of a reinstatement order, prospectively only, right? The factors that this court considers, they favor prospective application. There was a change in law, right? Riley clearly overturned longstanding president set by this court in Ortiz Alfaro and reaffirmed in Alonzo Juarez. But did the Supreme Court, in your view, apply the rule of retroactivity? I think that the Supreme Court simply didn't address what it didn't apply the rule to Mr. Riley himself, right? It acknowledged that the rule it was announcing was non-jurisdictional and then found that because the government didn't wish to press a timeliness ground for dismissal, it found that it does that there is nothing to preclude the case from going forward. So the case was remanded on that basis. And so I and I appreciate that. But then isn't there a presumption? I mean, you say that they didn't discuss it. Isn't there a presumption then that retroactivity applies? I think that this is a very unique situation, Your Honor. And appreciably, often most new rules do apply retroactively. But, you know, this court in Nunez-Reyes provided that there are still some situations where there is a new rule in civil proceedings, it's non-jurisdictional, that the court can go back and apply the Chevron oil test to look at whether retroactive application is appropriate or not. And I guess what's the best case or authority that tells us we should do that here? Because it's just not clear to me whether, you know, the Supreme Court did not apply the rule because of the government, but would have, I mean, inference here that maybe they would have. And what do we do with that? Do they have to be clear? I'm just trying to see what you're looking at to provide authority for that. Your Honor, we're looking at Nunez-Reyes in terms of the rule here. And, you know, I think that it's relevant that the government, that the Supreme Court certainly didn't have to look at retroactivity here because it wasn't going to apply the rule to Mr. Riley himself. And moreover, the, you know, the Supreme Court had received a number of statements from the government that suggested that there was going to be waiver in cases like this that were in the pipeline, right? In the briefing, they had talked about the possibility of if the, you know, the court was going to remand to look at jurisdictional issues, they could waive timeliness. If we were to agree with you that there is equitable tolling, do we need to reach the question of retroactivity? Is that something that we have to address? Not in this case, if you find that the deadline is subject to equitable tolling and that tolling is warranted for these two petitioners, which I think is certainly the case here, right? An extraordinary circumstance prevented them from timely filing, and they acted very diligently upon sort of being faced with that extraordinary circumstance. So we would sort of jump over retroactivity? I think that, you know, the court doesn't address retroactivity in every case. And so I think that the court could go forward without addressing retroactivity. But, you know, as I mentioned, there's a number of equitable reasons that the court could look to to determine that petitions like this in the pipeline. So would the equitable tolling decision, if we were to agree with you, go to equitable tolling, would be just unique to Mr. Tovar-Reyes? Well, equitable tolling determinations, right, are in two parts. First, it's whether the statute is subject to equitable tolling, and presumably that would apply to folks beyond Mr. Tovar-Reyes and Mr. Colin Carrillo. The determination about whether tolling is appropriate in a particular case, that is a fact-specific determination. And I take it you tend to agree with the Sixth Circuit's approach to this question? Yes, Your Honor. I think Oxlodge-Perez explains why, looking at the presumption in favor of tolling, the factors that generally apply. 1252b1 is a run-of-the-mill statute of limitations. It's not, it doesn't have any of the sort of characteristics of statutes where courts have found that the presumption in favor of tolling is rebutted. It's short. It's directed at the petitioner. It doesn't sort of use especially emphatic or detailed language. It doesn't have a whole set of exceptions that would be supplanted by the use of equitable tolling. And it's within a statutory scheme that's often cases are initiated by laypeople who are not necessarily represented by counsel. And so the sort of humanitarian concerns at issue are especially strong. What other INA provisions have courts found are subject to equitable tolling? So this court and the other courts that have considered have found that the deadline for filing motions to reopen and motions to reconsider found at 1252c, sorry, I apologize. I just said that wrong. 8 U.S.C. 1229c7 and c6 are subject to equitable tolling. And those are, you know, similarly using language, motions shall be filed by a particular time. But the court has found that tolling is appropriate for those deadlines. Any other provisions beside those? The court hasn't addressed it as far as I know, but the BIA itself has found that the deadline for filing administrative appeals is subject to equitable tolling as well in a case called Morales-Morales, matter of Morales-Morales. Can I ask a question specific to this procedural status of these cases? Um, in these two cases, the withholding only proceedings are ongoing. Yes, Your Honor. And Petitioners Council can address the merits and the facts in more detail, but both of them remain pending, one at the Immigration Court and one at the Board of Immigration Appeals. Okay. So, and we're entitled under our recent authority in Navarat, which I understand has been vacated. We wouldn't be able to just review the withholding only determination unless we put off the review of the reinstatement order. And then when we do that, we could then review both the withholding only determination along with the validity of the reinstatement order. My understanding is that Navarat didn't address the sort of stay issue. That was a case in which there was already a decision on the withholding only claim, and so they were both in front of the court. So we have a different procedural status right here. A different procedural status and also a different situation in terms of the fact that petitioners both raised challenges, both to the reinstatement order and to sort of the fact that they're going to want to challenge the determination of fear-based proceedings. They want to preserve their ability to review it. You mean petitioners here, that they've challenged the reinstatement orders. They obviously haven't challenged the withholding only determination because that's pending.  Yes, they are trying to preserve their ability to review those. Did you want to reserve the balance of your time? I would love to do that. Thank you, Your Honor. Okay. Good morning, Your Honors. May it please the court. Kelsey Morales on behalf of petitioners. I would like to reserve three minutes of my time for rebuttal. I will focus on petitioners' challenges to their reinstatement orders. We ask the court to hold that the reinstatement regulations are invalid and vacate petitioners' reinstatement orders. Alternatively, we ask the court to hold proceedings in advance until the conclusion of their fear-based proceedings before the agency. Petitioners make two challenges. First, that their reinstatement orders are invalid because they were issued by ICE agents, not immigration judges as required by 8 U.S.C. 1229A. As such, the regulations governing the reinstatement orders are ultra-virus to the statute and therefore invalid. Second, petitioners assert that they should be eligible for asylum even in reinstatement proceedings. Barring asylum produces inhumane results and conflicts with the asylum statute. We recognize that the court has previously denied these arguments, deferring to the agency that these regulations were reasonable interpretations of the law. But the Supreme Court has since made clear that deference to reasonable interpretations are not enough. The court must seek the best reading of the statutes before it. Here, the court's prior deference to the agency is clearly irreconcilable with Loper-Bray. As the regulations are ultra-virus to the Immigration and Nationality Act and exceed congressional authority and intent, this court should reconsider its decisions in Morales y Esquerdo and Perez-Guzman and vacate petitioners' reinstatement orders. I will first start with our argument that the INA requires immigration judges to issue reinstatement orders. This court has previously considered this argument in Morales y Esquerdo. A panel of this court determined that the reinstatement regulation that provides that ICE agents can issue the reinstatement order was invalid and contrary to the plain language of the immigration statute at Section 1229A. There, the statute provides that immigration judges have the sole and exclusive procedure for determining who could be admitted to the country. There, in reviewing the plain language as well as legislative history, the court found that the regulation was ultra-virus to the statute. We recognize that the court took this issue en banc and reconsidered it and deferred to the agency at Step 2. It found that the agency had presented a plausible reading of the interpretation. But we now know, following Looper-Bright, that that deference isn't sufficient, that the court must make an independent determination regarding the law. And here we submit that 8 U.S.C. 1229A governs reinstatement proceedings and that immigration judges must make these determinations. There's a number of reasons why we believe that. First, we start with the plain text. While 1229A establishes that it is a sole and exclusive procedure, the reinstatement statute does not present any procedures at all. And what we do know is that in the old reinstatement provisions at INA 242F, immigration judges were the ones who issued reinstatement orders. It's when Congress promulgated this statute in 1996, it is assumed to have known that immigration judges were the ones issuing these reinstatement orders. Also, it makes sense for immigration judges to make these determinations. As my friend spoke earlier, reinstatement determinations are complex determinations. They're a mix of admissibility questions as well as potentially address of retroactivity claims, mistaken identity claims, claims to citizenship. There's also a very limited amount of relief that can be made. It makes sense that these type of determinations are set before qualified immigration judges as opposed to ICE agents. This doesn't I would think that if there's more limited review from reinstatement orders that that counsel's in favor of officers being able to conduct those because it presumes that Congress has signaled you already had a full removal hearing in front of the IJ, reinstatement order comes in. There are only limited grounds in which you can seek review of that decision, including nonjudicial review for certain things. So why would that counsel in favor of immigration judges doing this rather than officers? Yeah, and I'd point the court to the court's decision in Coit v. Holder. I think there we learned that IHRA had dual purposes. It was both expediency and accuracy. Immigration judges are more likely to make accurate determinations regarding who is subject to reinstatement as opposed to have it be an ICE agent making these determinations that then goes to an immigration judge that may then come before this court. An immigration judge can has more qualified knowledge in terms of making these type of determinations. But I do want to ask, did I address your question there at all? Yes. And we believe that this court can reconsider that decision in line with Loper-Bright. There, Loper-Bright suggests that while Chevron-based precedent is not overturned, it said so as to specific agency actions. The agency actions at issue in Morales-Izquierdo on bank decision, as well as the Perez-Guzman case that dealt with asylum eligibility for individuals in reinstatement proceedings, addresses the specific action to those two non-citizens. Here, we are bringing two specific claims to this court. That is, whether or not the reinstatement orders as to these two petitioners are valid and whether or not they should get an opportunity to apply for asylum. And this is the suggested reading of the Fourth Circuit in the Orzu-Rombo v. Bondi case. I will now turn to the asylum question. If there are no further questions on Morales-Izquierdo. There, this court has previously considered the question of whether or not the regulation barring asylum eligibility for individuals in reinstatement proceedings is valid. And the court there deferred to the agency again at Chevron Step 2. It acknowledged that the agency had shown some weaknesses and that there was tension between applying this extreme, harsh, critical bar to non-citizens in reinstatement proceedings, but they deferred to the agency here. The court doesn't have to do that now, and I would like to point the court to the extreme humanitarian concerns that could arise if individuals in reinstatement proceedings aren't eligible for asylum. Individuals who are deported may face new and extreme hardship in their home country. They may face persecution. They may face torture. Our petitioners here are an example of that, and they should be entitled to the opportunity to apply for asylum based on that new harm. Otherwise, individuals could face expulsion from this country when they have extreme fear-based claims. I see that my time is up, so I will save the rest for rebuttal if there are no further questions. Thank you. Good morning, Your Honors. May it please the Court, Zachary Hebanks for the Respondent, the Attorney General of the United States. Although these cases appear to present several complex, thorny issues, the cases are ultimately rather simple because neither petitioner can get over this jurisdictional hurdle of presenting a colorable challenge to the DHS officer's determination to reinstate their prior removal orders. In other words, even if we assume, and I am not conceding, but if we assume that petitioners were correct on the tolling question and the reviewability question, petitioners do not challenge the factual predicates of this DHS officer's determination, and their legal challenges run headlong into this Court's precedent, which a sitting panel of this Court cannot overturn. So, for that reason, these cases can be resolved very simply on that jurisdictional defect. Otherwise, we do still raise our argument that these reinstated orders are not reviewable final orders as contemplated in the statute. Recent trilogy of Supreme Court cases has made that clear, and otherwise we disagree. So, counsel, walk us through what about the trilogy of these cases make our current precedent irreconcilable with that new Supreme Court precedent? Yes, Your Honor. So, when we look at Nosralla, Guzman-Chavez, and O'Reilly, the Supreme Court has repeatedly honed in on what this term final order of removal means. And so— But does it matter that Nosralla didn't involve reinstated removal orders or reasonable fair proceedings? It seems like that might make a difference here because the bar is so high to determine if it's a Miller versus Gamie type of issue. I recognize that the bar was high, Your Honor, and I appreciate that being pointed out now. And I would just add quickly that that does also support our arguments as to why petitioners cannot prevail on their legal challenges to the reinstatement orders as such because of the lack of clearly irreconcilable precedent. But regarding the final order of removal question, what matters is the Supreme Court in these three cases has really honed in on the term final order of removal, notably most recently in O'Reilly onto that this has to be an order that determines removability or commands removal. And then that undercuts the reasoning of this Court's line of cases on why it accepted for purposes of review that a reinstatement order is effectively or functions as a final order of removal. And I would go back to this Court's 2001 case in Castro-Cortez where the Court said these are not literally final removal orders. There's something else. And then Morales-Escarado also supports that rationale of these are a separate proceeding. They're not just a species of removal. And as the Supreme Court said in Fernandez-Vargas, it's— But, I mean, doesn't the Supreme Court is talking about a final order of removal being the actual order that causes the removal itself, right? In O'Reilly, the timing period was that faro order, which is a different type of administrative order, and that's the actual instrument that orders removal, not the later cat determinations, which for purposes of that are separate from. What does that have to do with a reinstatement order? I mean, if anything, I would think a reinstatement order is in the same flavor of a faro order that that's the instrument that orders the removal itself. So how does O'Reilly support your cause? O'Reilly supports our cause, Your Honor. And I agree with most of what you've said. I think that the key distinction here is that the faro, the final administrative removal order in O'Reilly's case and similar cases, that is itself a removal order. Without that order, the individual cannot be removed. And the reinstatement order, I understand that obviously why courts have said they are very similar in the sense that— Excuse me, let me just back up. So the reinstatement order is different because if we even just look at the text of the order, it says we are reinstating, i.e. enforcing this prior order that's already been entered. And as the Supreme Court said in Fernandez-Vargas, it's a tool, a way to implement or end a continuing violation. And that's why it's in this own bucket where it's not a faro. And to Your Honor's point, it's also not a cat order in that it's completely separate. It very much is its own separate procedure that occurs only in these situations where an individual has been removed and comes back unlawfully. And Congress set up a system where there doesn't have to be a removal order every time someone comes back in unlawfully after already being removed. But let me ask you, I mean, the implication of what you're arguing is, is that if someone is subject to a reinstatement order and there's a reasonable fear that they might be tortured on return, there would be no judicial review of that order. Is that correct? I believe so, Your Honor. So then how does that square with our treaty obligations that we cannot remove someone to a country of removal where there's a likelihood of torture under CAT? Well, the agency does do its job, Your Honor, and does evaluate these claims. But that's separate from what Riley says, is that it is confirmed that there is judicial review of CAT orders. And there are regulations. I mean, otherwise, why would we have a reasonable fear determination if at the end of the day, none of it is subject to any judicial review? I would just say that there is judicial review of a CAT order when it's alongside review of a final removal order, which is the only thing this Court has jurisdiction of. And these cases kind of illustrate. But I guess my premise is, let's say a reinstatement order, you're saying that's not a final order of removal. Someone goes to a reasonable fear determination and there's a determination that they would not be, you know, that there would not be a CAT fear. That is not reviewable under your argument by a court. And I just I don't see how that can be, especially with the way that Riley discusses the fact that CAT orders have to be reviewable, because there could be a present fear that someone might be tortured upon return that may not have existed when the original final order of removal was was ordered. I understand. I understand your concern, Your Honor. I do. But it does go back to what does the statute say? And that we can only have review or excuse me, not we, this Court can only have review over a final removal order, Your Honor. And there are practical implications. I'm sorry. How is that consistent with the Supreme Court's discussion of the zipper clause that allows us to review everything all at once? And that would be if there's a colorable challenge to the reinstatement order. It would be under that clause. We would have review of the BIA's withholding determination as well. Again, Your Honor, it's still that still presupposes that there is a reviewable final order. And I'll go back to what I said at the top of my argument of petitioners didn't present a colorable challenge to the only order in their cases here. And that's part of the difficulty of this case is it's not. I think they actually they did because we have this intervening case of Loper v. Bright. And I'm not sure that although the Supreme Court said, well, this we don't have to go back and revisit every statute. That was kind of dicta. And I'm not sure that we, you know, we shouldn't be reexamining every statute if it's true that the judiciary has an independent obligation to review the language of the statute and not to defer to the agency interpretation. Well, Your Honor, I think this court has answered that question. Lopez v. Garland and Mario Chavez v. Garland, whatever the merits of that argument are, there is now more precedent of this court saying that Loper bright is not this intervening change that wipes the slate clean and allows the courts to reevaluate these prior decisions. Your Honor, I think there's a lot of effectively roadblocks to get to what petitioners claim. You're asking us to reevaluate our prior decisions, which there are many saying a reinstatement order is a final order. Yes, Your Honor. OK, no end of inconsistent agency actions here. Well, Your Honor, as I said at the top, though, I do think my initial argument allows this court to and this court should resolve this issue, these cases on the simplest possible basis, especially because it is jurisdictional in nature of an individual to get in the courthouse doors needs to have some sort of challenge that the court can actually entertain. And here there's no factual challenge and the legal challenges are foreclosed. And I'm happy to discuss equitable tolling as well, unless there are more questions on either of those parts of our argument. Yeah, why don't you turn to equitable tolling? And I'd like to hear your reactions to the Sixth Circuit's approach to that question over this provision. Yes, Your Honor. We believe that the statute does not allow for equitable tolling for because of the text history, as well as especially the federal rules of procedure. And I understand the Sixth Circuit did reject this argument very recently, Your Honor. But I do think when we look at the Irwin presumption that statutory deadlines are generally amenable to tolling, here, Federal Rule 26B was on the books before Congress made this  And that effectively inverts or rebuts or stops the presumption because it applies to this very specific thing of an agency, excuse me, a petitioner for review from an agency decision. So that's kind of the baseline rule. And if we look just at the history of the statute, post Irwin in 1995, the Supreme Court decided the Stone case, which held that it was mandatory and the old deadline was mandatory and jurisdictional and cited the federal rules for the proposition that it is not subject to equitable tolling. A year later, Congress shortened the deadline, traded out permissive language for mandatory language going from a may to a must. I think that all supports the idea that here Congress was not operating in a situation where this presumption would be applicable. And respectfully, we do believe the Sixth Circuit got the decision wrong and didn't give the federal rule, did not specifically give the federal rule the the way it is due because otherwise I'm not sure what effect Federal Rule 26B-2 has if it does not apply in this situation, Your Honor. What do you make of the fact that we've that several courts have found motions to reopen to be equitably tolled? And that's very similar language. It also has shall in it. What makes that different than this? So a motion to reopen before the agency, Your Honor? A petition for review. Well, as I understand it, it's the – well, I guess both. The motion to reopen before the agency. But is there – are there cases that talk to the equitable tolling? I guess it's agency specific. Is that your argument? Well, my argument, yes. The Federal Rule 26B, which is one of our main arguments, especially in the Colin Carillo briefing, that wouldn't apply because of a motion to reopen before the board. It's a completely different animal. And that actually, I think, would be more similar to a lot of the cases petitioners rely upon of, for example, these inter-tax court appeals or various case filing documents in district courts, be it a habeas petition or what have you. I think that actually supports our argument in that petitions for review from agency actions are fundamentally different because Congress effectively approved the Federal Rules by not overruling them. And that's why, in this case, Congress's silence on tolling in the specific deadline provision actually supports our argument. And I would just note that in the 1252, there is on the – I'm sorry, I don't remember the chapter number, but regarding petitioners opening brief, that provision specifically gives this court authority to extend the deadline for good cause shown. Congress knows how to use that language. They did not do it in the PFR deadline, Your Honor. What's your best case to support your point on this? I think Gengalves v. Bondi from the First Circuit from lat 2025, Your Honor, would be one of our better arguments. Again, I do acknowledge the Sixth Circuit has rejected this argument in immigration cases, and the D.C. Circuit has also rejected it in Securities and Exchange Commission cases, Your Honor. To rule in your way, we would create a circuit split. Yes, Your Honor, but again, I would point out that these cases should be resolved at the very frontline question of did petitioners present an argument? Because, again, even if we assume I'm wrong here, petitioners are not – Final order of removal, is that your – No, Your Honor, just that petitioners are not challenging the facts and that their legal arguments are foreclosed, and that's a separate jurisdictional defect. So even – I'm sorry, they're foreclosed, why? So their arguments – their legal arguments against the reinstatement order are foreclosed by Morales-Escudero and Perez-Guzman, respectively, and then this court's cases in Lopez v. Garland and Maria Chavez v. Garland stating that Loper-Bright doesn't wipe the slate clean and that this court still has to respect its prior precedent. And so you're saying that the only way that they can challenge the reinstatement order is if they make factual challenges because they don't have legal challenges? I'm not going to foreclose the possibility that a different petitioner could have a legal My argument is the challenges presented today do not clear the hurdle. But I mean at least it clears the hurdle of being colorable because to Judge Wardlaw's point, Loper-Bright opens up the possibility that petitioners may prevail on that issue. I mean you are kind of picking and choosing which precedent should be – that we should be bound by under the Ninth Circuit. Like we can't ignore that precedent, but let's go ahead and wipe the slate clean on the jurisdictional ones. And however that shakes out, those are colorable arguments on either side, aren't they? Respectfully, no, Your Honor. And I do acknowledge that both parties in this case do have to have some arguments that appear to be in tension. But the distinction here is that post-Loper-Bright, the Lopez case and the Maria Chavez case rejected this idea that stare decisis doesn't apply to the Chevron-era precedents that did rely on Chevron. If other circuit courts have gone differently, that's something for them to shake out. But this court already took care of those arguments, Your Honor. And that's why it's foreclosed. If, for example, those two cases did not exist and these cases emerged a month after Loper-Bright, I don't think I would be standing here saying that the arguments were – I would not be saying with the same conviction that the arguments are foreclosed, Your Honor. And so let me get this really clear because I want to just really understand your argument. So tell me which cases of ours foreclosed the Loper-Bright argument? They are cited in both our briefs. It's – I believe it's Lopez versus Garland from 2024 and Maria Chavez might be versus Bondi, Your Honor. I apologize. They are cited throughout our brief for this proposition. Okay. But I don't have your brief, so. Apologies, Your Honor. I'm not operating on all fours here. So this – what's the second case that you said? Just tell me the first name. Maria Chavez, M-U-R-R-I-L-O, Chavez. Okay. We don't know if it's Bondi or – I'm sorry, Your Honor. I just don't have my brief open and I wanted to answer your questions essentially.  I understand. I understand. Just – okay. It might be Bondi. It might be Blanche. Yes, Your Honor. But both those cases dealt with prior agency decisions on – Lopez was crimes involving moral turpitude in this court saying if the court had already deferred to the board's interpretation that a specific crime was a crime involving moral turpitude, those decisions are – the court is bound to – bound by stare decisis, Your Honor. Okay. So I think you raise an interesting point. I also think that the Supreme Court just didn't want us to have to get into – reopen all of those cases on which is a crime of moral turpitude, what's a crime of violence. That's – it's already chaotic enough for – to go back and redo all those cases under new standards would just be an immense job for the courts. But there may be questions of a different nature that are of sufficient importance in particular I'm thinking about jurisdictional questions and judicial review questions that would warrant going back and looking – relooking at it with fresh eyes because there has been, as you pointed out earlier, a number of developments in the Immigration Act and how it bears on these new proceedings. Your Honor, I understand the impulse. I don't know of a case from this court crafting such an exception and I think if that was the impulse, this court would have to take either these issues or similar issues up in an en banc petition respectfully. Yeah, I guess that is one option. Do you – do you agree that Navarrette is not binding on this particular case because it – that was a petitioner there was challenging the cat-only order as opposed to the reinstatement order here? I think I understand your question, but I – no, I believe Navarrette is fundamentally binding and controlling in this case, Your Honor, because I think what really kind of – if I understand – But why? Because petitioner there never challenged the reinstatement order himself and in fact at the oral arguments in Navarrette, counsel essentially said, yeah, they would be frivolous and so they – and so the panel declined the request to amend to challenge the reinstatement order, whereas here you petitioners are actually challenging the reinstatement order. They're not challenging a later determination because it hasn't happened yet. I understand you disagree with the nature of that challenge, but doesn't that make this case fundamentally different than Navarrette? What makes Navarrette binding on us? Well, so what Navarrette said is that an individual has to bring a colorable challenge and that means it has to have some possible validity and that is my argument is that these arguments do not have any possible validity because they are foreclosed by precedent, Your Honor. That's why I believe Navarrette's controlling. I don't think Navarrette only applies in this very narrow circumstances of you have to bring – you can't not bring any challenge. I think there has to be some sort of challenge and it kind of goes to both petitioners as cases are repeatedly asking for an abatement to the point where in the Tobar-Reyes brief on pages 30 and 31, the petitioner says, well, if the agency grants withholding in CAAT, he may end up electing to forego judicial review altogether. That, I think, also shows why Navarrette's controlling here and that – and why my first argument is arguably our best argument of if we want to hash out whether or not this reinstatement order was valid or not, the cases are here. They're before the court and the arguments are foreclosed. I'm sorry to interrupt. I'm sorry, Your Honor. The request for abeyance has come straight out of Riley. I mean that is what the Supreme Court said a petitioner should do. It understood the practical difficulties of the consequences of the case, which was you have to file a petition for review in the court of appeals from a farrow order, from the order of removal, even if there are yet to be determined CAAT issues or withholding issues. So why would we hold that against petitioners for doing exactly what the Supreme Court suggested would be the right path to obtain judicial review of a later CAAT decision that would be folded into a challenge to a reinstatement order? Let me clarify my position just a hair.  Because I do think this, again, is why this case is controlled by Navarrette is if this court were to decide it had jurisdiction and grant the abeyance and then eventually, hypothetically, these hypothetical adverse orders come and petitioners hypothetically decide they want to challenge them, then these cases look even closer to Navarrette in that they didn't challenge, didn't bring a colorable challenge to the reinstatement order, Your Honor. And that's why I started off with that argument today is I do think that is what is controlling here is absent a claim of some possible validity, this court has nothing to do. There's no jurisdiction at that point. But, I mean, in general, you wouldn't disagree with the Supreme Court suggestion that that would be the appropriate way of doing it. If there's a reinstatement order, you challenge that, you know, within 30 days, ask the Court of Appeals to, you know, hold it in abeyance pending anything CAAT related or withholding related, and then, you know, seek judicial review from that as well if need be. I take it as long as there's something colorable about the challenge to the reinstatement order, you wouldn't find that objectionable, would you? I would not make the exact same argument about the jurisdictional point, Your Honor. I know there are other cases pending with same issues, and I don't want to foreclose any arguments any of my colleagues may make today or any other day. So I do not know what argument we specifically would make. I can imagine us arguing that if an individual does have colorable challenges, that the court should hear them in the first instance and see what happens. But I do take your point, Your Honor, that the only way petitioners could eventually find a way to judicial review on these potential hypothetical CAAT orders would be to do what you just explained, described. Counsel, I just want to ask another question. It might not bear directly on this case, but tell me what the proper procedural move would be if a person comes back that fits the definition of the criteria for reinstatement and expresses fear because of dramatically changed country conditions. If I go along with your assumption that there's no judicial review of that, what would be the way to obtain review, even just by the agency? Well, the individual, if they expressed a fear, would be placed in reasonable fear proceedings where they would get an interview. If an asylum officer determines that they have what's called a positive reasonable fear, they are placed in withholding only proceedings. If the asylum officer determines the inverse, that they did not present a reasonable fear, then they would still get immigration judge review over that determination. And in the situation you're describing, I do think it is important to point out that the DHS has the authority to reinstate removal orders, but in various situations, they will determine and decide not to do that in a situation and instead place the individual back in full removal proceedings, which would then create a new removal order and allow all these claims to be heard. Without stating any specific cases, I have seen that happen in various cases where for whatever factor DHS decides the proper course would be to issue a new charging document and start removal proceedings over allowing full removal proceedings, not this kind of bifurcated situation. Yes, sorry. What is your view about the retroactivity? I know that's not your main argument, but what is your view about seeing Riley as having perspective only relief versus applying retroactively? It's happy to address it, Your Honor. Riley is a Supreme Court decision. Obviously, the presumption is that it applied fully retroactively. I would disagree that it did not apply the rule announced in Mr. Riley's case for the simple reason that the rule announced was this is the deadline and it's not jurisdictional. If the rule is jurisdictional, it would have been dismissed. And because you agree that it did not explicitly apply the rule. Well, because the old rule was jurisdictional, so it would have been dismissed. So by applying, saying it is not jurisdictional, it allowed the difference between a jurisdictional rule and a mandatory claims processing rule is that the government could then waive our objection, which is what the Supreme Court did. So I do think it applies. Were there words in the opinion that said we are applying this retroactively? No, Your Honor, but that is the default assumption unless they explicitly say the otherwise. I understand the presumption, and that's what I'm trying to figure out as well, whether or not because the government in that case kind of took that issue away from the Supreme Court, it looks like anyway, because they weren't going to apply the 30 days. And so it looks like it just might have fallen off a cliff. And so we're looking at whether or not the presumption applies, I guess. And you're saying that the presumption does apply. Yes, Your Honor, I am. And I do believe because it announced this new rule that the statutory filing deadline was not jurisdictional, it inherently applied it to Mr. Riley's case by not dismissing his case. Your friends across the aisle on this equitable tolling point is to Botchler. I think it's, I don't know if it's pronounced Botchler. Yeah. So why should we not follow that here? It seems like it's very similar. I don't remember the exact specifics, but I believe that was an appeal or a petition to the Article 1 tax court. So again, it's just a different situation altogether. And I mean, the case that would be closest would be the Harrow versus Department of Defense case from 2024. And in that case, the Supreme Court left open the tolling question, but very similar situation where they said a petition for review from an agency decision to a circuit court is non-jurisdictional. And I'm not aware of the Supreme Court ever directly answering the question as to what the effect is in this specific situation, which we do believe rebuts the presumption that tolling applies as set out in Irwin because of the federal rules. I would again remind of this statute-specific history where a year before the statute was amended, the Supreme Court said the deadline is mandatory jurisdictional and cannot be tolled, citing Federal Rule 26B. Then Congress amended it and made the deadline tougher, and they switched out permissive language to mandatory language, Your Honor. For all those reasons, we do believe this specific statutory deadline is not amenable to equitable tolling. And if there are no further questions, Your Honor, for all these reasons, the government believes both cases should be dismissed or denied. Thank you. Thank you, Your Honors. I'll briefly address some of the jurisdictional arguments before moving to tolling. Navarrete is distinct, and as Petitioner's Counsel will get into, we certainly raise at a minimum colorable claims. Navarrete involved a petition for review filed before Riley was announced, so it expressly challenged only a reasonable fear determination, and expressly the petitioner's attorney expressly conceded that any challenge to the reinstatement would be frivolous. That's distinctly not the case here. As to the argument that the reinstatement order is not a final order, and therefore, you know, that's a jurisdictional bar, even in Castro-Cortez, this court acknowledged that a reinstatement order gives effect to a prior order, which I think does sort of map onto the fact that the statute talks about whether an order orders removal in addition to whether an order sort of concludes somebody is removable in terms of defining the types of orders that can be final orders of removal. Riley and Nasrallah, as Your Honors were discussing, both affirmed that CAT orders are judicially reviewable, and the government's position appears to be that we should just trust the agency and any sort of judicial review is not necessary of those life or death claims in this situation. That's the impact of determining that a reinstatement order is not a final order here. Nor is it appropriate that the DHS can essentially choose to put somebody in 240 proceedings and choose who gets judicial review. That doesn't sort of meet those obligations. And because there's a reasonable interpretation of the statute that treats a reinstatement order as a final order, that's appropriate in terms of avoiding the serious constitutional questions that would be raised by eliminating judicial review and also supported by the presumption in favor of judicial review. In terms of the equitable tolling, the Federal Rule of Appellate Procedure 26B2, to be clear, the Supreme Court discussed FRAP 26 in NutraCeutical. It discussed FRAP 26B1, a bar to extending the time to file a notice of appeal, which doesn't have any exceptions. Here, Respondent argues that FRAP 26B2 rebuts the presumption in favor of tolling, but those two provisions have a key difference. B2 has an exception to allow extending deadlines where a deadline is authorized by law. As Respondent conceded, finding that 26B2 bars or rebuts the presumption in favor of tolling, which has to be done by Congress, not by the federal rules, is directly contrary to the Sixth Circuit in Oxlodge, the D.C. In Harrow, the Supreme Court didn't sort of defer to FRAP 26B2. When it gave directions on remand about considering tolling, it said that the presumption in favor of tolling is a high bar and that we don't understand Congress to lightly alter the age-old procedural doctrines that read tolling into statutes of limitations as the sort of presumed rule. Finally, Boehler is especially relevant here. It has many of the same characteristics as the deadline here. And while it's true that Boehler involved a petition for review to tax court rather than the type of petition for review that's subject to Rule 26B2, there are similar rules of procedure for tax court which contain a similar sort of bar to extending petition for review deadlines set by statute. The Supreme Court didn't look at that at all in deciding that the statute of Boehler was subject to equitable tolling. And last point, if the court will allow it, Gunkalvis, which respondents suggested was the best case in their favor, was issued before Riley, so it treated the filing deadline as jurisdictional, necessarily not subject to tolling, and so it didn't analyze tolling at all. For those reasons, I would ask that this court finds that it has jurisdiction to review these petitions and to treat them as timely filed. Thank you. Just a couple points, Your Honor. We more than raise tolerable challenges to the reinstatement order. Our challenges go at heart of what the statute requires, and I would point the court to the decision of the panel and Morales Izquierdo as saying when you review the statute, as you should, the regulations, reinstatement regulations, barring an immigration judge from hearing reinstatement orders is unlawful. That is exactly what Loper Bright asked this court to do, to engage in an independent review of statutes and the en banc decision deferred to the agency. So I think here we can look directly to the panel decision of Morales Izquierdo to find that we more than raise tolerable challenges. Can I ask you about that, counsel? It's one thing for the court in Loper Bright to say that we don't defer to an agency's interpretation of statute. But is that enough to say that a three-judge panel of our court could overrule a prior Ninth Circuit decision? Why? Because, I mean, under Miller v. Gammy, we have to find that the prior decision is clearly irreconcilable with intervening Supreme Court authority. And I don't it's kind of hard to read Loper Bright as doing that much when it isn't speaking to this particular issue. Though I read Miller v. Gammy as saying when both the reasoning and the theory of a higher authority intervene in this court's precedent, the court is not bound by that prior precedent, and they must kind of apply the Supreme Court's determination here. And so I read Loper Bright as clarifying what the analytical framework is for reviewing statutes. And so that framework is completely at odds with what the court did in Morales Izquierdo and Perez-Guzman, which was a Chevron Step 2 analysis. So, I mean, in your view, Loper Bright gives a three-judge panel the license to go back and revisit any and all prior Ninth Circuit decisions that relied on the prior Chevron deference standard? Not all decisions, Your Honor. I think if new citizens bring claims challenging the validity of regulations or statutes that this agency that the court priorly deferred to the agency, the court has a duty to engage in a new analysis. So we're not asking the court to invalidate Morales Izquierdo or Perez-Guzman as it applied to those petitioners. But we are asking when the court is faced with this question, as it applies to our petitioners, what is the correct determination of the law as the court sees it when engaging in the traditional tools of statutory analysis and not deferring to the agency? And so here, I think the decisions that the court will make must be different. For Perez-Guzman, the court clearly found that there was a tension between the statutes and deferred to the agency despite recognizing weaknesses and having concerns. And then Morales Izquierdo, the panel went to the Chevron step two without engaging in constitutional avoidance analysis or reviewing the rules of lenity in making that statutory determination. So I think as it applies to these petitioners, this specific agency action, which is ICE reinstating these two petitioners, the court has an obligation to determine what is the correct law at the time. And I know my time has run. Yes, it has. So if you want to make your final concluding statement. We ask, you know, we stand firmly behind that these two challenges that the reinstatement regulations are invalid. And we ask that the courts vacate petitioners reinstatement orders. And alternatively, if the court is disinclined to do that, we ask that the court hold these proceedings in advance pending the conclusion of their fair base proceedings. Thank you. Thank you. Thank you. Ms. Morales and Ms. McLeod-Ball and Mr. Hugh Banks, appreciate the oral argument presentations here today. The cases of Tovar Reyes and Colin Carrillo, National Immigration Litigation Alliance versus Blanche is now submitted. Thank you.
judges: MURGUIA, WARDLAW, SANCHEZ